UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SCOTT MIKULSKI,

          Plaintiff,

v.                             Case No. 17-CV-179

WELLS FARGO BANK, N.A.,
SELENE FINANCE LP, and
PREMIUM MORTGAGE ACQUISITION TRUST.

          Defendants.

## DECISION AND ORDER

### I.     Facts and Procedural History

Plaintiff Scott Mikulski filed the present action against defendants Wells Fargo Bank, N.A. (Wells Fargo), Selene Finance, LP (Selene), and Premium Mortgage Acquisition Trust (the Trust), alleging claims under the Real Estate Settlement Procedures Act (RESPA), state common law, and Wisconsin Statute § 224.77(1), and seeking injunctive relief. (ECF No. 19.) Defendants Selene and the Trust move for dismissal of the action under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (ECF No. 21.) The parties have fully briefed

the motion, which is ready for resolution. All parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 6, 13, 16.)

Wells Fargo commenced a foreclosure action against Mikulski in April of 2011 in Waukesha County Circuit Court. (ECF No. 19, ¶ 9.) The court entered a judgment of foreclosure in October of 2011. (ECF No. 19, ¶ 10.) Mikulski subsequently "attempted to cure any alleged default on his home mortgage by filing for bankruptcy protection; however, he was unable to cure those defaults." (ECF No. 19, ¶ 11.)

In spring 2016 Mikulski submitted a loan modification application to Wells Fargo and Selene, the servicer of the loan. (ECF No. 19, ¶¶ 12-14.) Shortly thereafter Mikulski received notice that he was denied a loan modification. (ECF No. 19, ¶ 15.) Believing incorrect information was used in analyzing his eligibility for a loan modification, Mikulski, by his attorney, sent a letter dated August 4, 2016, to Selene, purporting to provide Selene with the "correct" information and asking to have his application re-run. (ECF No. 19, ¶ 19; *see also* ECF No. 21-4.) Mikulski alleges that Selene never responded to or investigated this inquiry. (ECF No. 19, ¶¶ 28-29.)

Selene's alleged failure to respond or investigate Mikulski's inquiry of August 4, 2016, forms the basis of Count I of Mikulski's First Amended Complaint. (ECF No. 19.) Mikulski's allegations that Wells Fargo and Selene used incorrect information and improperly analyzed his loan modification application, and that all defendants improperly acted to sell Mikulski's home at a sheriff's sale, form the bases of Counts II,

III, and IV. (ECF No. 19.) In response to the motion to dismiss, Mikulski concedes that his third cause of action applies only to Wells Fargo (ECF No. 23 at 9), a defendant who has not moved for dismissal.

II.     **Motion to Dismiss Standard**

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Thulin v. Shopko Stores Operating Co.*, 771 F.3d 994, 997 (7th Cir. 2014) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The court accepts as true all well-pleaded facts and then determines whether the facts give rise to an entitlement of relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

III.    **Analysis**

The Home Affordable Mortgage Program (HAMP) emerged as a result of Congress's "response to rapidly deteriorating financial market conditions in the late summer and early fall of 2008." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012). The Secretary of the Treasury created the program to encourage home loan servicers to modify loans of qualifying homeowners who were in danger of default. *Id.* Although HAMP created obligations upon participating loan servicers, it did not create a private right of action whereby homeowners could sue servicers for violations of HAMP guidelines. *Id.* at 559, n.4. Thus, Mikulski does not allege that the defendants' violation of HAMP guidelines directly gives rise to a cause of action. (ECF No. 23 at 1.)

3

Rather, Mikulski asserts that "[d]efendants, by violating HAMP Guidelines, have violated other state and federal laws." (ECF No. 23 at 1.)

The moving defendants contend that Mikulski is effectively attempting to bring a private right of action under HAMP by "reframing" a violation of HAMP guidelines as various other legal claims. (ECF No. 21 at 6.) But the moving defendants' argument represents a rehashing of the "end-run" argument rejected by the court in *Wigod*. *See id.* at 581-86. In *Wigod*, in addition to making various preemption arguments, Wells Fargo argued that the plaintiff's state law claims were an impermissible "end-run" around the fact that Congress did not create a private cause of action under HAMP. *Id.* at 576-86. Referring to this argument as "novel," the court found it to be without legal support. *Id.* at 581. "The absence of a private right of action from a federal statute provides no reason to dismiss a claim under a state law just because it refers to or incorporates some element of the federal law." *Wigod*, 673 F.3d at 581.

For example, Wisconsin created a private right of action against a mortgage banker who "[v]iolate[s] any … federal or state statute, rule, or regulation that relates to practice as a mortgage banker …." Wis. Stat. § 224.77(1)(k). Although Congress chose not to create a private right of action for violations of HAMP, Wisconsin seemingly did essentially just that. Therefore, the court rejects the contention that Mikulski's claims are barred on the ground that each represents an impermissible attempt to create a private

right of action under HAMP. Accordingly, the court finds it necessary to address the merits of each claim Mikulski raises as to the moving defendants.

A. **The RESPA Claim**

The First Cause of Action in the First Amended Complaint alleges "Violations of RESPA, 12 U.S.C. §§ 2605(e)(1) and (2)." Specifically, it alleges that "Selene did not properly analyze and assess Milulski's loss mitigation application, in that Selene (among other problems) used incorrect information to determine Mikulski's modification eligibility." (ECF No. 19, ¶ 26.) It alleges that the August 4, 2016 letter was a qualified written request (QWR) under RESPA (¶ 27), that Selene's failure to respond to the QWR violated 12 U.S.C. § 2605(e)(2) (¶ 30), and that Mikulski suffered damages "as a result of the denial of a loan modification." (ECF No. 19, ¶ 31.) The First Amended Complaint does not allege that the Trust (or Wells Fargo) violated RESPA. Therefore, as to this claim the only defendant is Selene.

A QWR is "written correspondence (other than notices on a payment coupon or similar documents) from the borrower or her agent that requests information or states reasons for the borrower's belief that the account is in error. 12 U.S.C. § 2605(e)(1)(B). To qualify, the written request must also include the name and account of the borrower or must enable the servicer to identify them. *Id.*" *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2011).

The United States Court of Appeals for the Seventh Circuit has held that no "magic language" is required before a servicer must recognize written correspondence as a QWR requiring a timely response. *Catalan*, 629 F.3d at 687. Thus, correspondence need not contain the phrase "qualified written request." *Baehl v. Bank of Am., N.A.*, No. 3:12-cv-00029-RLY-WGH, 2013 U.S. Dist. LEXIS 46445, at *10 (S.D. Ind. Mar. 25, 2013) (citing *Vician v. Wells Fargo Home Mortg.*, No. 2:05-cv-144, 2006 U.S. Dist. LEXIS 26141, 2006 WL 694740, at *4 (N.D. Ind. Mar. 16, 2006)). "Any reasonably stated written request for account information can be a qualified written request." *Catalan*, 629 F.3d at 687.

However, a QWR must relate to servicing of the loan. Although subsection (B) of 12 U.S.C. § 2605(e)(1) does not state that a QWR must relate to the servicing of the loan, the preceding subsection (imposing an obligation to acknowledge receipt of a QWR) does. Absent this limitation, accepted by courts across the country, *see, e.g.*, *Williams v. Wells Fargo Bank, N.A.*, 2010 U.S. Dist. LEXIS 36247, at *7 (N.D. Cal. 2014); *see also Moore v. FDIC*, No. 08 C 596, 2009 U.S. Dist. LEXIS 110979, at *9 (N.D. Ill. Nov. 30, 2009) ("To be deemed a qualified written request, the borrower's written correspondence must also request information relating to the 'servicing' of the loan. 12 U.S.C. § 2605(e)(1)(A)."), the definition of a QWR would be so broad so as to lose any meaning. If a QWR was not limited to inquiries related to the servicing of a mortgage loan, literally any request for information made to a servicer would be a QWR as long as the borrower included his

name and account. But loan servicers are not expected to provide every sort of information upon demand.

If a servicer receives a QWR from a borrower, the servicer must respond. 12 U.S.C. § 2605(e)(1)(A). A "servicer" is "the person responsible for servicing of a loan," 12 U.S.C. § 2605(i)(2), and "servicing" "means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan … and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). RESPA gives borrowers a cause of action against a servicer for actual damages suffered as a result of a servicer's failure to respond to a QWR. 12 U.S.C. § 2605(f)(1)(A).

In moving to dismiss Mikulski's RESPA claim Selene argues that it did not violate RESPA because Mikulski's letter was not a QWR. Specifically, Selene contends that "the letter does not allege an error with [Mikulski's] loan account" nor does it seek information relating to the servicing of Milulski's loan. (ECF No. 21 at 8.) Instead, the letter "simply takes issue with Selene's purported process[ing] of the loan modification application." (*Id.*)

In response, Mikulski contends that his August 4, 2016 letter was a QWR under RESPA. It "identifies Mr. Mikulski's account and explains how the account is in error,"

exactly what § 2605(e)(1)(B)(ii) says a QWR needs. (ECF No. 23 at 7.) He alleges that Selene violated RESPA by failing to respond.

In reply, Selene argues that, because Mikulski had long been in default under the loan and had "been converted into a foreclosure judgment" by the time the August 4, 2016 letter was sent, it was no longer servicing Mikulski's loan in August 2016. (*Id.* at 3-4.)

Mikulski refers to the August 4, 2016 letter in his amended complaint. (ECF No. 19, ¶ 27.) Because the letter is a document that is "central to the complaint and … referred to in it," in ruling on the motion to dismiss the court may consider the letter, which the moving defendants submitted along with their motion (*see* ECF No. 21-4), without converting the motion to dismiss into one for summary judgment. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

Because the letter is short, the court will quote it here in its entirety:

RE: Appeal from HAMP Denial
Borrower: Scott Mikulski Mortgage Loan # 741868
Property Address 3917 S. Woodhill Court, New Berlin, WI 53151

To Whom It May Concern,

We represent Scott Mikulski in respect to all mortgage and foreclosure issues. Mr. Mikulski received notice of denial of his HAMP modification, dated 7/7/16, and we are by this letter appealing from that denial.

> The denial indicates Mr. Mikulski was denied a HAMP Tier 1 and HAMP Tier 2 modification based on negative NPV tests. I have enclosed documentation showing that:
>
> > A. Property Value (Item 7) was incorrect. On the NPV test you used $279,000 as the value. Mr. Mikulski is in a chapter 13 bankruptcy, and in that bankruptcy, he valued the house at $295,000, Neither Selene nor the lender objected to this valuation, and so the value is agreed by each to be $295,000.
> > B. The unpaid principal balance you used is incorrect. (Item 19). You used $250,572. The actual amount, per bankruptcy filings by the lender, is $255,300.
> > C. The interest rate before modification you used is 2.88%. It should have been 3.0%.
>
> Please re-run the tests and approve Mr. Mikulski for a modification under HAMP. Thank you, and if you need further information, please communicate directly with me.

(ECF No. 21-4.)

District courts within the Seventh Circuit have held that correspondence related to a loan modification are not QWRs that trigger the servicer's duty to respond under RESPA. *See Turner v. Nationstar Mortg., LLC*, No. 1:15-cv-01363-RLY-DKL, 2017 U.S. Dist. LEXIS 5975, at *15 (S.D. Ind. Jan. 17, 2017) ("[A] QWR must relate to servicing; thus, a borrower's request for loan origination information or for a loan modification does not qualify."); *Mayer v. EMC Mortg. Corp.*, No. 2:11-cv-147, 2014 U.S. Dist. LEXIS 55521, at *14-15 (N.D. Ind. Apr. 22, 2014) ("A servicer's denial of a permanent loan modification and any actions related to any loan modification are outside the term 'servicing', and thus cannot be pursued under RESPA."); *Vangsness v. Deutsche Bank Nat'l Tr. Co.*, No. 12 C 50003, 2012 U.S. Dist. LEXIS 169388, at *13 (N.D. Ill. Nov. 29, 2012) ("The letters ask

for a loan modification and they ask for a response to the request for a loan modification. They do not ask for any information or allege any errors in the account. Plaintiffs do not cite any authority supporting a claim that a request for loan modification constitutes a qualified written request ….").

*Turner* involved multiple alleged QWRs. The one that is relevant to this case was submitted after the servicer denied the borrower's request to modify the loan. In it the borrower "asked [the servicer] to answer questions regarding the proposed monthly payment, including 'the amount of the 'proposed monthly payment'; the interest rate used to calculate the 'proposed monthly payment'; [and] the amount used as 'verified income' as that term is used in the Denial Letter.'" *Turner*, 2017 U.S. Dist. LEXIS 5975, at *17. The court concluded that, because the servicer had no obligation to provide the borrower with a loan modification, it had no obligation under RESPA to respond to the letter. *Id.* at *18 (citing *In re Salvador*, 456 B.R. 610, 623 (Bankr. M.D. Ga. 2011) (holding that RESPA does not obligate servicers to respond to requests for information pertaining to a failed attempt to modify a loan; such information is "outside the scope of the term 'servicing' as defined in [RESPA's implementing regulations, codified at 24 C.F.R. § 3500.2]"); *Saucedo v. Bank of America, N.A.*, No. 3:11-cv-00813-MO, 2011 U.S. Dist. LEXIS 138824, 2011 WL 6014008, at *2 (D. Or. Dec. 1, 2011) ("The denial of a loan modification is not 'servicing.'"); *Williams v. Wells Fargo Bank, N.A., Inc.*, No. C 10-00399 JF (HRL), 2010 U.S. Dist. LEXIS 36247, 2010 WL 1463521 at *3 (N.D. Cal. April 13, 2010)

(a request for documents relating to borrowers' options for loan modification, short sale, or bankruptcy was not a request for information relating to the servicing of the loan)).

Mikulski's letter does not allege that his "account is in error." *See* 12 U.S.C. § 2605(e)(1)(B). Rather, it alleges there was an error in his loan modification application. RESPA does not protect borrowers from errors in loan modification applications or provide borrowers a means for correcting such errors.

Nor did the letter relate to the "servicing" of the loan. By the letter, Mikulski simply sought to alter the terms of his loan. That is necessarily outside the definition of "servicing," which relates to payments according to the terms of the loan. 12 U.S.C. § 2605(i)(3).

In substance, the letter was an allegation that the denial of the loan modification was improper and was a request for reconsideration. But such matters are not within the scope of a QWR. *See Nash v. PNC Bank, N.A.*, Civil Action No. TDC-16-2910, 2017 U.S. Dist. LEXIS 60697, at *19 (D. Md. Apr. 20, 2017) (citing *Sutton v. CitiMortgage, Inc.*, 2017 U.S. Dist. LEXIS 4841, *15 (S.D.N.Y. 2017); *Farraj v. Seterus, Inc.*, No. 15-cv-11878, 2015 U.S. Dist. LEXIS 166642, 2015 WL 8608906, at *3-4 (E.D. Mich. Dec. 14, 2015)). Therefore, the court will grant Selene's motion to dismiss Mikulski's claim that Selene violated RESPA.

Because this case is before the court pursuant to 28 U.S.C. § 1331 and the court finds that the lone claim presenting a federal question must be dismissed, the court must consider whether it is appropriate for the court to continue to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3). Because the parties have not addressed this question, the court finds it inappropriate to decline to exercise supplemental jurisdiction at this time. Additionally, the court notes that, although it is not alleged in the complaint, it is plausible that the court also has jurisdiction under 28 U.S.C. § 1332. Mikulski alleges he is a Wisconsin citizen and nothing in the complaint suggests that any defendant is a citizen of Wisconsin. Although the complaint does not allege the amount in controversy, it appears plausible that it is more than $75,000. If Mikulski intends to proceed in federal court on the basis of diversity jurisdiction, he must promptly seek to amend his complaint to adequately allege a basis for such jurisdiction. Barring that, the defendants may ask that the court decline to exercise supplemental jurisdiction and the court will resolve the matter upon consideration of the briefs of the parties.

B. **Wisconsin Statute 224.77(1)**

The Second Cause of Action in the First Amended Complaint purports to assert a claim for "Violations of Wis. Stats. § 224.77(1)." It alleges that "Selene and Wells Fargo are mortgage bankers subject to the requirements of Wis. Stat. § 224." (ECF No. 19, ¶ 33.) It alleges that Selene failed to comply with the standard of professional conduct

for mortgage bankers set forth in 12 C.F.R. 1024.41 by not using "reasonable diligence in gathering information for Mikulski's modification application" and by mishandling the modification. (ECF No. 19, ¶¶ 34-36.) It further alleges that all three defendants, including the Trust, "acted to move Mikulski's house to a sheriff's sale despite not having complied with HAMP procedures and federal regulation [sic]." (ECF No. 19, ¶ 37.) As a result, it alleges that Mikulski "has suffered emotional and financial distress, and damages, as alleged herein, and is thus aggrieved by defendant's actions." (ECF No. 19, ¶ 40.) Therefore, all three defendants are alleged to have violated Wis. Stat. § 224.77(1)(i), (k), (l) and (m). (ECF No. 19, ¶ 39.)

Wisconsin law proscribes various actions by "a mortgage banker." Wis. Stat. § 224.77(1). Selene, as a mortgage servicer, falls within the statutory definition of "mortgage banker." Wis. Stat. § 224.71(3)(e). Mikulski does *not* allege that the Trust was a mortgage banker. Nor does he allege some other way in which the Trust is subject to the provisions of the statute. (ECF No. 19, ¶ 33 ("Selene and Wells Fargo are mortgage bankers to subject to the requirements of Wis. Stat. § 224.").) Therefore, Mikulski has not adequately alleged a claim against the Trust for any violation of Wis. Stat. § 224.77(1).

Although the statute contains a long list of prohibited conduct, the First Amended Complaint does not identify which specific provision Selene allegedly violated. Given Mikulski's allegation that Selene did something that "is not competent for a mortgage banker" to do (ECF No. 19, ¶ 38) and references Selene's purported

13

violations of the HAMP procedures and a federal regulation (ECF No. 19, ¶ 37), the court presumes Mikulski's claim is based on Wis. Stat. § 224.77(1)(i), which states that a mortgage banker may not "[d]emonstrate a lack of competency to act as a mortgage banker, mortgage loan originator, or mortgage broker in a way that safeguards the interests of the public," and/or Wis. Stat. § 224.771(1)(k), which prohibits mortgage bankers from "[v]iolat[ing] any provision of this subchapter, ch. 138, or any federal or state statute, rule, or regulation that relates to practice as a mortgage banker, mortgage loan originator, or mortgage broker."

The moving defendants argue that Mikulski failed to allege that he suffered any actual concrete injury as required under Wis. Stat. § 224.80(2), which permits suits for violations of Wis. Stat. § 224.77(1) only by "[a] person who is aggrieved by an act which is committed by a mortgage banker …." They argue that any damages suffered by Mikulski were caused by his default and the subsequent foreclosure, both of which occurred well before he applied for the loan modification. He had no right to a loan modification, and as such there is no causal connection between his alleged emotional and financial distress and the defendants' conduct related to the loan modification. (ECF No. 21 at 9-10.)

Mikulski responds that he suffered an actual injury when he lost his home to foreclosure. He contends that this injury is traceable to the moving defendants because, but for their missteps in handling his loan modification application, his loan would

have been modified, he would have resumed making payments, and he would have retained possession of the home. (ECF No. 23 at 8-9.)

"[A] person is aggrieved pursuant to Wis. Stat. § 224.80(2) only if he or she can show some injury or damage." *Avudria v. McGlone Mortg. Co.*, 2011 WI App 95, ¶31, 334 Wis. 2d 480, 802 N.W.2d 524. The causal chain that Mikulski identifies is sufficient to survive a motion to dismiss. Whether Mikulski can adequately prove this causal connection is a factual matter not appropriately before the court on a motion to dismiss. *See Wigod*, 673 F.3d at 579. But, for present purposes, the court concludes that Mikulski has alleged an actual injury that is "not conjectural or hypothetical." *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L.Ed.2d 635, 644 (2016). Therefore, the court finds that Mikulski's alleged injures are sufficient to satisfy Article III and to survive the motion to dismiss.

C. **Interference with Contract**

The First Amended Complaint's Fourth Cause of Action is "Interference with Contract." (ECF No. 19.) That cause of action alleges that Selene interfered with the contract that Mikulski had with the "owner/investor of their [sic] loan" "by improperly analyzing the modification application." (ECF No. 19, ¶¶ 47-48). Specifically, it alleges that "Selene did not seek out information it had available and failed to reassess the application even after the errors were pointed out to it." (ECF No. 19, ¶ 49.) "Had Selene properly analyzed the application, Mikulski would have again been able to begin

making payments on his loan, but he could not do so without a loan modification; thus, as a result of Selene's actions it interfered with the Plaintiff's ability to perform under the contract and caused damages to the Plaintiff's [sic] including all damages alleged herein above." (ECF No. 19, ¶ 49.) No allegation is made against the Trust.

Selene argues that there can be no cause of action for tortious interference with contract because the contract that Selene allegedly interfered with was the contract between Mikulski and the mortgagee which Mikulski had breached years before he sought a loan modification. (ECF Nos. 21 at 12; 24 at 7-8.). Having already breached the contract by the time he sought a loan modification, Selene says, Mikulski cannot argue that the conduct of the moving defendants several years later "caused [Mikulski] to breach the loan agreement[.]" (ECF No. 24 at 8.)

The First Amended Complaint is explicit that the contract that is the subject of the tortious interference claim is the contract between Mikulski and the "owner/investor of their [sic] loan." (ECF No. 19, ¶ 47.) However, his argument depends on an obvious non sequitur. Mikulski asserts that Selene prevented him from performing under the contract because he could not afford the payments unless he received a modification. (ECF No. 23 at 10 (Mikulski appears to have omitted the "not" in the relevant sentence but the court reads it in because the sentence makes no sense without it); *see also* (ECF No. 19, ¶ 50 ("Had Selene properly analyzed the application, Mikulski would have again been able to begin making payments on his loan, but he could not do so without a

loan modification ….")). Performance under a modified contract is necessarily not performance under an original contract. Thus, Selene's alleged actions in thwarting Mikulski's modification efforts plausibly interfered with the contract that existed between Mikulski and the mortgagee only if Mikulski had a contractual right to a modification. Mikulski does not allege he had any such right. Therefore, the court finds that Mikulski's fourth cause of action in the First Amended complaint, which the court reads as being against Selene alone, fails to state a claim upon which relief may be granted. Therefore, the court will grant Selene's motion to dismiss as to this claim.

IV. **Conclusion**

In the August 4, 2016 letter, Mikulski sought to correct alleged errors in his mortgage modification application. Mikulski did not allege that his mortgage loan account was in error. Nor did the letter did not relate to the "servicing" of his loan. Therefore, the letter was not a QWR and his RESPA claim fails.

The court, however, denies Selene's motion to dismiss Mikulski's second cause of action. Mikulski has sufficiently alleged that he was aggrieved by Selene's alleged violation of Wis. Stat. § 224.77(1). And as explained in *Wigod*, this sort of state law claim that depends upon HAMP is not foreclosed by the absence of a private right of action under HAMP.

Selene's motion to dismiss Mikulski's fourth cause of action will be granted. As framed by Mikulski, the claim that Selene prevented him from performing his contract

with the mortgagee is without merit. Mikulski was not performing under that contract and admittedly could not do so. Accepting as true Mikulski's allegations that Selene thwarted his pursuit of a loan modification, that cannot constitute a tortious interference with the mortgage contract. Mikulski does not allege that he had a right to a loan modification under the mortgage contract and a modification is necessarily not performance under the contract.

Mikulski's request for injunctive relief is now moot (ECF No. 23 at 10). Therefore, the court does not consider Selene's and the Trust's arguments seeking dismissal of this request for relief.

Finally, because the request for injunctive relief is now moot, the court will dismiss the Trust as a defendant in this action. As noted above, the First Amended Complaint does not allege that the Trust violated RESPA. (ECF No. 19, ¶¶ 24-31.) Nor does the First Amended Complaint allege that the Trust was a mortgage banker or otherwise subject to the requirements of Wis. Stat. § 224.77. (ECF No. 19, ¶ 33.) Therefore, Mikulski has failed to state a claim against the Trust for any violation of Wis. Stat. § 224.77.

**IT IS THEREFORE ORDERED** that Selene Finance and Premium Mortgage Acquisition Trust's motion to dismiss the First Amended Complaint (ECF No. 20) is granted with respect to the first and fourth causes of action. As to the second cause of

action in the First Amended Complaint, the motion is granted as to Premium Mortgage Acquisition Trust and denied as to Selene Finance.

Dated at Milwaukee, Wisconsin this 25th day of August, 2017.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge